384 A.2d 1347

**Peter A. MELLI**

**v.**

**Rosemary C. MELLI, Appellant.**

Superior Court of Pennsylvania.

Argued June 14, 1977.

Decided April 13, 1978.

husband, slapped husband, used vulgar language, embarrassed him in front of friends, complained of their financial status and refused to perform household duties, when considered in light of husband's conduct that might constitute indignities on his part, was insufficient to establish offense of indignities to the person.

Joseph Hakun, Philadelphia, for appellant.

Jack Brian, Upper Darby, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

Appellant-wife appealed from the decree of the Court of Common Pleas of Philadelphia County which granted a divorce a. v. m. from appellee-husband. The complaint in divorce alleged the grounds of desertion and indignities to

the person. The master recommended a divorce on those grounds, and the court below granted the divorce. This appeal by the wife followed. We reverse.

The parties, Frank and Rosemary Melli, were married in 1955. They lived together for four years and there were two children born of the marriage—a girl in 1957 and a boy in 1959. During the period between 1960 through 1962, Mrs. Melli suffered from a serious kidney ailment, nephrosis. Her illness and its serious and painful complications caused her to be hospitalized three different times during the two-year period, each stay extending several months. After being discharged from the hospital, Mrs. Melli returned to her parents' home to recuperate. She was incapable of performing her duties as a wife, mother, and homemaker and, thus, her mother performed these services.

Mr. Melli and the children also moved into the home of Mrs. Melli's parents in order to keep the family together, but in January, 1961, the husband left that home and moved in with his mother. Mr. Melli testified that he had asked Mrs. Melli to accompany him to their separate home in which they had previously resided, and offered to provide a housekeeper for her since she was physically and emotionally unable to perform any household services. However, the husband never retained the housekeeper and, in fact, he testified he was not financially able to do so. And so, the parties continued to live apart.

The husband did not file his complaint in divorce until 1968. After filing the bill of particulars, the action was dormant until 1974 when it was dismissed with prejudice. After being reinstated, the case proceeded in 1975.

Three hearings were held before a master. In his conclusions of law, the master found that the wife's actions constituted a constructive desertion and indignities to the person. It is now the duty of the appellate court to make a complete and independent investigation of the evidence in order to determine whether a legal cause for divorce exists. *Cammann v. Cammann,* 217 Pa.Super. 376, 274 A.2d 549

(1970). Our review extends to the credibility of the witnesses and the weight of the evidence. *Gehris v. Gehris,* 233 Pa.Super. 144, 334 A.2d 753 (1975). In this case, the burden was on the husband to prove by clear and convincing evidence that a divorce should be granted. *McElroy v. McElroy,* 185 Pa.Super. 78, 138 A.2d 299 (1958). Having given the master's report and the lower court opinion full consideration, *Cammann v. Cammann,* 217 Pa.Super. at 280, 274 A.2d 549, we nevertheless conclude that the appellee-husband has not proved by clear and convincing evidence that a divorce should be granted on the grounds of desertion and indignities to the person.

In this case, husband alleges his wife constructively deserted him as of January, 1961, when he left the home of her parents. The husband testified conditions were intolerable for him and that his wife refused to move back into their separate home despite his offer to hire a housekeeper for her.

■ Constructive desertion is recognized in Pennsylvania, *Zorn v. Zorn,* 382 Pa. 319, 114 A.2d 907 (1955), and is a ground for divorce when

> "the innocent spouse [shows] that he or she was wilfully or maliciously put out of the common home by force or justifiable fear of immediate bodily harm or locked out against the will or without consent of the innocent spouse and that such a condition persisted for two years." *Pingor v. Pingor,* 188 Pa.Super. 447, 149 A.2d 141 (1959), affirming opinion at 16 D. & C.2d 258, 260.

This constructive desertion is a ground for divorce when a person:

> "Shall have committed willful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years." Act of May 2, 1929, P.L. 1237, § 10; Act of March 19, 1943, P.L. 21 § 1; 23 P.S. § 10(d) (1963).

The use of the term "constructive" is not meant to enlarge the statutory grounds for divorce, but merely to charge a spouse with desertion because his or her intentional conduct causes the other spouse to leave the common home. See 1 Freedman, Law of Marriage and Divorce in Pennsylvania § 237 (2d ed. 1957); 27A C.J.S. Divorce § 36(3) (1961).

Case law stresses that in order for constructive desertion to be found there must be intentional, affirmative action by one spouse which actually causes a turning out of doors, thereby depriving the other spouse of the benefits of marriage. E. g., *Cammann v. Cammann, supra; Reiter v. Reiter,* 159 Pa.Super. 344, 48 A.2d 66 (1946). In the instant case, there is some testimony that the wife struck the husband on isolated occasions, but there was no evidence that the husband feared for his safety or that the doors of the house were locked against him. Instead, the husband argues, and the master found, that the wife's refusal to return to the marital domicile with her husband constituted constructive desertion. It is true cases have held that where the supporting spouse provides a suitable home and housekeeper for the supported spouse, the latter's refusal to move into the home, without cause, may be desertion. *Kowalchick v. Kowalchick,* 187 Pa.Super. 201, 144 A.2d 742 (1958); *Ulery v. Ulery,* 28 Westmoreland 135 (1946). The case at bar is readily distinguishable from this reasoning because the master concluded, supported by a doctor's testimony, that the wife was not physically or psychologically able to care for herself without help at the time the alleged offers for separate domicile were made. Although, perhaps, a housekeeper could have cared for the wife's physical needs, there is no indication such a person could have cared for her psychological needs. Furthermore, as we have mentioned, the husband never made an effort to retain a housekeeper to perform the necessary services. Thus case law has held, and we conclude here, that it is not desertion where a supported spouse refuses to accompany the supporting spouse to a separate domicile, if the supported spouse is too ill and the necessary help and living conditions are not unequivocally

forthcoming. See *Libshitz v. Libshitz,* 156 Pa.Super. 118, 39 A.2d 463 (1944); *McElroy v. McElroy,* 185 Pa.Super. 78, 138 A.2d 299 (1958); *Snook v. Snook,* 10 Adams L.J. 139 (1968).

The master also concluded that the wife's conduct constituted indignities and, thus, was an additional ground for divorce. The husband's testimony in this regard consists of sporadic incidents where the wife allegedly threw a drink at him, slapped him, used vulgar language, embarrassed him in front of friends, complained of their financial status, and refused to perform household duties.

The offense of indignities is defined as including "vulgarity, unmerited reproach, habitual contumely, intentional incivility, manifest disdain, abusive language, malignant ridicule and every other plain manifestation of settled hate and estrangement." *Breene v. Breene,* 76 Pa.Super. 568, 572 (1922). However, the essential feature of the offense is that "it must consist of a *course of conduct or continued treatment* which renders the condition of the innocent party intolerable and his or her life burdensome." [Emphasis added.] *McKrell v. McKrell,* 352 Pa. 173, 180, 42 A.2d 609, 612 (1945). In the case at bar, the husband's testimony was contradicted by an eyewitness to one of the alleged events who said the conduct of the parties was a "domestic squabble" and a "little spat." The wife also testified to the conduct of the husband that might constitute indignities on his part, thereby rebutting his contention that he was an innocent, as well as injured, spouse. In light of this testimony we find that there was not the course of conduct necessary to make out the offense of indignities before the wife's illness. Any misconduct on the wife's part after her illness is excused if it stemmed from her condition since "the acts of a spouse resulting from ill health do not furnish a ground for divorce." *Albrecht v. Albrecht,* 176 Pa.Super. 626, 633, 109 A.2d 209, 212 (1954). See also *Benscoter v. Benscoter,* 200 Pa.Super. 251, 188 A.2d 859 (1963); *Moyer v. Moyer,* 181 Pa.Super. 400, 124 A.2d 632 (1956); *Stewart v. Stewart,* 171 Pa.Super. 218, 90 A.2d 402

(1952); *Stinson v. Stinson,* 163 Pa.Super. 497, 63 A.2d 413 (1949).[1]

The decree of the lower court is reversed, and the complaint in divorce is dismissed.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

1. The wife also raises the issue of whether reversible error was committed by failing to consider the admitted adultery of husband and by limiting the cross-examination concerning that adultery. If the alleged constructive desertion began in January, 1961 and if the adultery began in July, 1964, the adultery would not be a defense because the cause for divorce would have already occurred. *Litch v. Litch,* 89 Pa.Super. 15 (1926). However, since we have found there was no constructive desertion or indignities, we need not pass on these evidential questions.