444 A.2d 1166

**Nicholas F. VALERIO**

v.

**Sylvia VALERIO, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 31, 1981.

Filed Feb. 5, 1982.

Reargument Denied May 12, 1982.

Douglas W. Reed, Pittsburgh, for appellant.

Richard F. Welsh, Pittsburgh, for appellee.

Before WICKERSHAM, WIEAND and BECK, JJ.

BECK, Judge:

This is an appeal from Decree entered December 17, 1980, after hearing on appellant-wife's exceptions to the Master's

report, finding that appellant-wife committed wilful and malicious desertion, and was absent from the habitation of the injured and innocent spouse, without reasonable cause, for and during the term and space of two years.[1] The decree divorced the parties from the bonds of matrimony.

Appellant-wife asserts on appeal that:

(1) Appellee-husband is precluded from claiming that he had sufficient cause to leave the marital residence since this has already been litigated and determined against him; and

(2) The evidence presented by appellee-husband is insufficient under the law to establish either wilful and malicious desertion by appellant-wife or that appellee-husband is an innocent and injured spouse. We find that appellant-wife prevails on both grounds.

The complaint in the instant action at No. 0429 July 1978 filed by appellee-husband herein recited that the prior actions in divorce filed by appellee-husband were:

"An action filed at 3946, July of 1974, in the Court of Common Pleas of Allegheny County, Family Division, June 26, 1974. Order of Court withdrawing action in divorce filed December 1, 1974, and an action filed at 0263, October Term, of 1976, wherein the divorce on the grounds of indignities were denied."

In fact, the record reveals that No. 0263, October Term, of 1976 (hereinafter referred to as the 1976 action) asserted both indignities and desertion as grounds. The following facts with regard to the procedural posture of the grounds asserted were found in the 1976 action by the honorable court en banc which heard exceptions to that Master's report filed by appellee-husband herein:[2]

"A side bar conference was held off the record after which the plaintiff moved to amend his complaint to strike

1. This action was brought under Act of May 2, 1929, P.L.1237, 23 P.S. § 10(d) and is governed by that act as interpreted by the appellate courts of the Commonwealth.

2. Opinion by Judge Narick, March 12, 1978, p. 3.

the grounds of desertion and elected to proceed on indignities only."

On exceptions, appellee-husband then claimed that the Master had required him to elect to proceed on either the grounds of indignities to the person or desertion. The court found no such requirement on the record, but reviewed the record with regard to both asserted grounds due to appellee-husband's assertion that he did not, in fact, wish to abandon the claim of desertion. The court held:

"After a careful independent review of the whole record, this court is convinced that, if the plaintiff had in fact been put to an election, such ruling would be harmless error.

\*　　\*　　\*　　\*　　\*　　\*

"We are therefore satisfied by the record that the defendant has not indulged in a course of conduct which warrants a decree in divorce on the grounds of indignities to the person, nor did the defendant desert the plaintiff and thus the plaintiff is not entitled to the granting of a divorce from the bonds of matrimony."

Appellee-husband has not appealed from the order entered in the 1976 action, nor does he claim any error in that decree. He simply asserts that the former action related to indignities only and is irrelevant to the instant action.

We find that in the 1976 action, adjudication of which was entered March 12, 1978, Judges Brosky and Narick specifically found that appellee-husband had engaged in a course of conduct which would have justified appellant-wife in leaving the marital abode. This finding was made after appellee-husband sought to assert his claim of desertion in that action after having abandoned the claim before the master. Even if, due to the confused procedural posture of the claim of desertion in that action, we do not treat it as a final ruling on the ultimate issue, nonetheless the findings of fact cannot be ignored. Those findings are unchallenged by appellee-husband.

However, in the instant case even if this court looks at the testimony by appellee-husband as totally true, what appel-

lee-husband has testified to is his own desertion of appel-
lant-wife.

◼ While this court must give full consideration to the
Master's specific findings as to credibility,[3] as well stated in
*Dukmen v. Dukmen*, 278 Pa.Super. 530, 534, 420 A.2d 667,
670 (1980):

"In a divorce case it is the responsibility of this court to
make a de novo evaluation of the record of the proceed-
ings and to decide independently of the master and the
lower court whether a legal cause of action in divorce
exists. *Steinke v. Steinke*, 238 Pa.Super. 74, 357 A.2d 674
(1975). The master's recommendation is advisory only."

See *Nacrelli v. Nacrelli*, 288 Pa. 1, 136 A. 228 (1927).

A review of the entire record in this action, including the
findings of fact included in the record of this action made in
the related 1976 action and those made December 11, 1980 in
opinion by Kaplan, J., reveals the following:

"On Labor Day, 1963, the defendant [appellant-wife]
had an operation to remove a brain tumor."[4]

"After her operation, testimony showed that the plain-
tiff [appellee-husband] took virtually no interest in his
wife's physical or mental well-being. Rather, he spent
little time with his wife and son, eventually started to see
another woman, and finally left his wife eight months
after her brain tumor was removed."[5]

Appellee-husband testified[6] that in May of 1964, he and
his wife argued, and the following occurred:

3. This court is totally reliant upon the judge of the lower court as to
the content of the Master's report since the said report is not
included in the record to this court and cannot be located after the
efforts of the Prothonotary of this court.

4. Master's report in 1976 action. That report found that "it is your
Master's opinion that the testimony of the plaintiff was not credible
while that of the defendant was frank and responsive for the most
part. Defendant's testimony was corroborated by witnesses ...."

5. Master's report in 1976 action.

6. Hearing of February 6, 1979, 10–11, and 13.

"I think I was in the kitchen. We had a phone in the bedroom. She went to the bedroom and she came out. She said: 'My dad wants to talk to you.' I said: 'For what reason.' She said: 'I told him what happened.' I said: 'Well, it is none of his business.' She said: 'Well, he wants to talk to you. He is going to knock some sense in your head.'"

Appellee-husband testified that he did "get on the phone" with appellant-wife's father and has no idea whether her father came to the home because:

"[W]hen I hung up, I left."

Appellee-husband testified that he did "visit" with his wife at what had been their marital abode, but that the reason he did not return to live with her was:

"Well, because first of all in trying to get back with my wife, there was no way that I would have any kind of a life with her unless I would try to, you know, try to make her understand that it was for her and I was trying to get together; but every time we tried, she would just keep arguing with me; and I just didn't feel I wanted to go through that at that time."

As stated by this court in *Melli v. Melli*, 253 Pa.Super. 286, 384 A.2d 1347, 1349 (1978), citing *Zorn v. Zorn*, 382 Pa. 319, 114 A.2d 907 (1955) constructive desertion is made out when:

"The innocent spouse [shows] that he or she was wilfully or maliciously put out of the common home by force or justifiable fear of immediate bodily harm . . . ."

While the conversation described by appellee-husband, even if taken as unjustified, might cause appellee-husband to absent himself for an hour or so while tempers cooled simply to avoid argument, it is very far from constituting an immediate threat of harm of any kind. Furthermore, the conduct by appellee-husband found as a fact by Judges Brosky and Narick clearly did justify appellant-wife in seeking comfort from her family and in asking her family to intercede for her to try to talk appellee-husband into changing his conduct. It is clear that appellee-husband deserted

268

appellant-wife without justification and further, by his own admission, refused to move back into the marital abode. In this light, the later purported attempts at reconciliation become irrelevant. While they might, if appellant-wife's testimony is totally ignored, rise to a defense to an action by appellant-wife for divorce, the case does not come to us in this posture. A deserted party is "not required to seek a reconciliation." *Yohey v. Yohey*, 205 Pa.Super. 329, 208 A.2d 902, 905 (1965) and see *Chasman v. Chasman*, 161 Pa.Super. 77, 81, 53 A.2d 876 (1947) ("Libellant [deserted party] had no duty to invite her back or to attempt reconciliation.")

Finally, under our duty of de novo review of the record, we note that the appellee-husband's testimony is replete with inconsistencies and is not credible on its face. In light of this, and in light of prior findings of fact based upon the testimony by independent witnesses, we find that the testimony by appellant-wife that she did, and does, wish to resume marital life with appellee-husband if he will divest himself of other women and if he will discontinue subjecting her to conduct no spouse need put up with, should be given full credit.

In this case, appellee-husband has failed to show that he was wilfully and maliciously deserted without reasonable cause.

The decree of the lower court is therefore reversed, appellee-husband's request for divorce from the bonds of matrimony is denied, and a decree is entered for appellant-wife in this action.

WIEAND, J., files a dissenting opinion.

WIEAND, Judge, dissenting:

I respectfully dissent. My review of the record discloses that appellee did establish by competent evidence that appellant was guilty of desertion; and therefore, I would affirm the decree of divorce entered by the trial court.

The evidence in the instant case is conflicting. The parties were married on May 12, 1962, and lived together until May 27, 1964. At the time of the hearing before the Master, they had been living separate and apart for more than fifteen years. Their separation was precipitated by an argument, at the conclusion of which appellant-wife's father threatened by telephone to come over and "knock some sense" into appellee-husband's head. Immediately thereafter, appellee left the marital home. He testified that following his departure he made repeated attempts to reconcile, and on at least one occasion had made arrangements to lease an apartment so that his wife could rejoin him and they would be able to cohabit as husband and wife. He testified that all of his requests for reconciliation were rejected by his wife. Although this testimony was contradicted by appellant, the Master found appellee's testimony more credible. The Master, therefore, recommended, and the court found, that appellee was entitled to a divorce on the grounds of desertion.

On appeal, it is the duty of an appellate court "to make an independent study of the record and to determine whether a legal cause of action for divorce exists." *Schrock v. Schrock*, 241 Pa.Superior Ct. 53, 57, 359 A.2d 435, 437 (1976). Although an appellate court is not bound by the Master's findings, where the issue is one of credibility the Master's findings should be given the fullest consideration, as he or she had the opportunity to hear and observe the witnesses. Where the ultimate decision rests on disputed testimony, the Master's determination is particularly persuasive. *Gehris v. Gehris*, 233 Pa.Superior Ct. 144, 148, 334 A.2d 753, 755 (1975).

Desertion has been statutorily defined as the "willful and malicious desertion, and absence from the habitation of the injured and innocent spouse, without a reasonable cause, for and during the term and space of two years . . . ." Act of May 2, 1929, P.L.1237, § 10, 23 P.S. § 10(d).[1] Where one

---

1. The parties did not make application to proceed under the new Divorce Code of 1980, and the provisions of that law were not considered by the court below.

spouse is ejected by force or compelled to leave the marital home because of a threat of force and a reasonable apprehension that such force will be employed, constructive desertion has been established. The force or threat thereof may be imposed by the spouse or by a relative of the spouse. See 1 Freedman, Law of Marriage and Divorce in Pennsylvania, § 243 (2d ed. 1957). Constructive desertion has long been recognized as a form of desertion and thus grounds for divorce in Pennsylvania. See: *Melli v. Melli*, 253 Pa.Superior Ct. 286, 384 A.2d 1347 (1978); *Heimovitz v. Heimovitz*, 161 Pa.Superior Ct. 522, 55 A.2d 575 (1947); *Reiter v. Reiter*, 159 Pa.Superior Ct. 344, 48 A.2d 66 (1946). Desertion can also be established by proof of the rejection of a bona fide offer to resume the marital relationship. This is so regardless of whether the separation had been consensual or the result of one spouse's desertion. See: Freedman, supra, §§ 237, 240.

I find it unnecessary to decide whether appellant-wife was guilty of constructive desertion by compelling appellee to leave the marital home on May 27, 1964, following a quarrel and the threat by appellant's father to knock some sense into appellee's head. It may well be that this did not constitute ejectment by force or the threat of force sufficient to require appellee to abandon the common home. See: *Scanga v. Scanga*, 167 Pa.Superior Ct. 133, 74 A.2d 723 (1950); *Heimovitz v. Heimovitz*, supra; *Reiter v. Reiter*, supra; *Barnes v. Barnes*, 21 D. & C. 101 (C.P.Cumberland Co. 1934). It does not follow, however, that appellee's departure from the marital home following the quarrel and threats was without cause so as to make him a deserting spouse. See: *Reiter v. Reiter*, supra.

Moreover, and in any event, if appellant rejected good faith efforts to reconcile initiated by appellee thereafter, she became a deserting spouse. The Master recommended, and the trial court found, that within two years after separation appellee made repeated, good faith offers to reconcile and

resume the marital relationship with appellant. I am unable to agree with the majority that those attempts to reconcile are irrelevant. On the contrary, when appellant refused to return and live with her husband in response to his good faith offers to reconcile, appellant became the deserter. *Whelan v. Whelan,* 183 Pa. 293, 38 A. 625 (1897); *Hardie v. Hardie,* 162 Pa. 227, 29 A. 886 (1894); *Bauder's Appeal,* 115 Pa. 480, 10 A. 41 (1887); *Grove's Appeal,* 37 Pa. 443 (1861); *Laterza v. Laterza,* 124 Pa.Superior Ct. 103, 188 A. 89 (1936); *Walsh v. Walsh,* 117 Pa.Superior Ct. 579, 178 A. 399 (1935); *Ward v. Ward,* 117 Pa.Superior Ct. 125, 177 A. 515 (1935); *McDermott v. McDermott,* 113 Pa.Superior Ct. 255, 173 A. 746 (1934); *McDonald v. McDonald,* 108 Pa.Superior Ct. 80, 164 A. 830 (1933); *Weisbrod v. Weisbrod,* 103 Pa.Superior Ct. 267, 156 A. 542 (1931); *Kurniker v. Kurniker,* 94 Pa.Superior Ct. 257 (1928); *Kelly v. Kelly,* 51 Pa.Superior Ct. 603 (1912). After two years, that desertion ripened into a valid ground for divorce. *Bauder's Appeal,* supra; *Barnes v. Barnes,* supra.

The majority also implies that the instant action may be barred by a prior action in which appellee was denied a divorce on the grounds of indignities. However, my examination of the record in the instant case discloses that the defense of res judicata and/or collateral estoppel was not raised in the proceedings before the Master, was not the subject of appellant's exceptions to the Master's report, was not considered in the opinion of the court below, and has not been preserved as a "question involved" in the instant appeal. These potential defenses, therefore, have been waived. They raise complex issues which have not been argued by the parties and which I find it unnecessary to decide.

The parties have been separated for more than 17 years. Their marriage has been irretrievably broken. I would acknowledge legally what the parties have achieved in fact and affirm the decree of divorce.